UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARIN W.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. 3:22-CV-5315-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his applications for disability insurance benefits and supplemental security income. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

## BACKGROUND

Plaintiff filed for disability insurance benefits and supplemental security income in April 2019, alleging an amended disability onset date of February 2019. Administrative Record (AR) 17, 193, 199. His applications were denied initially (AR 121) and upon reconsideration (AR 126, 133). Represented by an attorney, Plaintiff testified at a hearing before an Administrative Law

Judge (ALJ) on April 16, 2021. AR 12-44. The ALJ then issued a decision granting Plaintiff applications from the date of his 50th birthday—February 25, 2021—onward, but finding Plaintiff was not disabled before then. AR 104. The Appeals Council denied Plaintiff's request for review on March 2, 2022, making the ALJ's decision the final decision of the Commissioner. AR 1-4; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## THE ALJ's FINDINGS

The ALJ found Plaintiff suffered from the severe impairments of obesity, alcohol use disorder with cirrhosis of the liver, ascites due to alcoholic cirrhosis, lumbar degenerative disc disease, and umbilical hernia status post repair. AR 106.

The ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: he cannot climb ladders, ropes, or scaffolds; he can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; he cannot work around hazards such as unprotected heights and exposed moving mechanical parts; and he cannot tolerate more than occasional exposure to extreme cold or vibration.

At step five of the sequential evaluation the ALJ determined that prior to February 25, 2021 (when Plaintiff's age category changed), he remained capable of performing jobs that existed in significant numbers in the national economy such as Assembler, Sorter, and Visual Inspector. AR 114.

DISCUSSION

The issue presented by this case is whether the ALJ erred in his determination that Plaintiff was not disabled until his 50th birthday, as such an error would entitle Plaintiff to approximately two years of retroactive benefits.

Plaintiff claims the ALJ erred in his assessment of Plaintiff's subjective reporting about how symptoms of cirrhosis of the liver impact his functional capacity as well as his assessment of Plaintiff's treating physician's opinion regarding the same, and by failing to address the lay witness report submitted by Plaintiff's brother. As discussed in more detail below, Plaintiff testified that as a result of the edema he experienced in his lower extremities he needed to elevate his legs throughout the day. Plaintiff's treating physician concurred, and also opined that Plaintiff would need to lie down for several hours a day due to his ascites and edema and that he would miss more than four days of work per month. Plaintiff's brother submitted a statement documenting his observations of Plaintiff's difficulties caused by swelling in his legs and feet.

I.   <u>The ALJ failed to provide clear and convincing reasons to discount Plaintiff's reported need to elevate his legs throughout the day.</u>

In May 2019 Plaintiff wrote on a social security administration function report that he was unable to stand and walk for a long period of time or for any distance. AR 241. He further indicated that "swollen feet and legs" also impact his ability to squat, kneel, and climbs stairs, and that he is "able to walk maybe 100 yards" before needing to rest or sit. AR 246.

By August 2019 the swelling in his legs and feet had become more severe causing him "reduced mobility" and the need to elevate his legs more throughout the day. AR 260.

At the administrative hearing Plaintiff testified that he could sit in a regular desk chair for approximately 45 minutes before needing "to go to the recliner and elevate [his] feet." AR 27. He estimated at that time he could stand for 10 to 15 minutes before he would need to elevate his feet or use the restroom due to the side-effects of his medication. AR 26.

The ALJ found Plaintiff's subjective reporting, generally, to be "less than fully consistent with the record." AR 111. The ALJ explained that Plaintiff's activities of daily living were "not entirely consistent with the extreme limitations he has alleged" (AR 11) and that "treatment has been relatively minimal through the relevant period with documentation of missed follow up appointments" and examinations that "have revealed some edema" but were "largely unremarkable." *Id*.

Plaintiff argues these were not specific, clear, and convincing reasons to reject Plaintiff's subjective need to elevate his legs throughout the day. Dkt. 10 at 6. This Court concurs.

When assessing the reliability of a claimant's disability allegations, an ALJ considers the extent to which such allegations are consistent with the objective evidence and other evidence in the record. 20 C.F.R. §§ 404.1529(c), 416.929(c). Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ failed to identify what portion of Plaintiff's subjective complaints were not credible and then connect them to his conclusion that Plaintiff did not need to elevate his legs and feet throughout the day, but could actually stand and/or walk for up to two hours at a time. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

While an ALJ may rely on daily activities in rejecting a claimant's testimony where those activities contradict the claimant's testimony, here the ALJ's general statement that Plaintiff's activities of daily living where "not entirely consistent" with his claimed limitations fails to identify what activities are inconsistent with Plaintiff's need to elevate his legs throughout the day. AR 11; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). It is entirely plausible that Plaintiff could engage in the daily activities described above while taking rests in his recliner throughout the day to elevate his legs as he testified he does. AR 27. Consequently, on remand the ALJ must reevaluate Plaintiff's credibility and identify what, if any, of his activities of daily living are inconsistent with his reported need to elevate his legs throughout the day.

In addition, although a conservative course of treatment can undermine an individual's subjective reports, the ALJ must consider what treatment options are available for the impairment to make such a finding. *Carmickle v. Comm'r, Soc. Sec. Admin*. 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Arakas v. Soc. Sec. Admin.*, 983 F.3d 83, 102 (4th Cir. 2020) (rejecting a finding of conservative care where the treatment was typical for the impairment).

Here, the ALJ simply concluded that Plaintiff's subjective reporting was less than fully credible because he had engaged in "relatively minimal" treatment (and missed some appointments) without identifying which of Plaintiff's conditions he was referring to or what treatment the ALJ believed Plaintiff should have undergone. AR 11.

In a separate section of his decision the ALJ did offer a general assessment of Plaintiff's medical record, including his struggles with leg-swelling associated with liver failure. AR 110-11; *see Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)(confirming that a court "clearly err[s] by overlooking the ALJ's full explanation" including "all the pages of the ALJ's decision"). The ALJ wrote:

> The claimant has a history of cirrhosis of liver with ascites beginning prior to the alleged onset date (1F/5; 3F). He was initially found **not to be a candidate for a transplant** due to alcohol use (1F/9; 2F/2). **The claimant was treated throughout the relevant period with medication** (2F; 3F). The claimant had an appointment with Alexander Park, M.D., his internal medicine physician, on February 22, 2019. This was his first appointment since January of 2018. The claimant reported **abdominal fullness and leg edema. A physical examination revealed 1+ pitting edema, ankle to mid-tibia**, and a reducible umbilical hernia. The claimant was encouraged to have more frequent follow ups, **his medication was adjusted**, and the claimant was **referred to hepatology** (3F/41-43). At a hepatology appointment on March 8, 2019, an ultrasound showed **no tappable ascites**. The claimant reported **leg cramps when taking his diuretics**, but reported no other symptoms. His doctor noted that **he may consider restarting transplant workup, but noted the claimant's obesity as a concern** (2F/2-4). A physical examination revealed trace edema of the heart and a reducible umbilical hernia. The examination also showed a possible **"touch" of lower extremity edema** (2F/3-4).

>The claimant saw Dr. Park again in March 15, 2019. Notes indicate that the claimant's ascites was steadily improving, but still significant. Dr. Park notes that the **claimant did not make the diuretic changes recommended**. An examination revealed **2+ putting edema, ankle to mid-tibia** (3F/43-44). Notes show that the claimant missed his May of 2019 follow up appointment with Dr. Park. His next appointment was October 31, 2019. The claimant reported that his umbilical hernia was bothering him. Dr. Park found that the claimant was **clinically stable** and **may not require a transplant**. The claimant was referred to general surgery for hernia repair and to a gastroenterologist (7F/34-36).

AR 110 (emphasis added).

Although this evaluation provides more insight into the ALJ's view that Plaintiff had missed some appointments, it still fails to address what additional treatment the ALJ believes Plaintiff should have undergone for his liver failure.

According to Plaintiff, during the relevant period of time he had very few treatment options to address the symptoms caused by his cirrhosis of the liver other than undergoing a liver transplant (which he did not qualify for during the relevant period, as the ALJ noted and as discussed further below), and he engaged in most of them, including diuresis, a low-sodium diet, attempts at weight loss, eventual abstention from alcohol, and regular elevation of his feet. Dkt. 10 at 6; AR 290, 319-23, 369-72, 466, 520.

Short of undergoing a liver transplant—which the Commissioner suggests Plaintiff should have done, though the ALJ did not so find[1]—the Court concurs with Plaintiff that the ALJ failed to explain what other medical treatment he believed Plaintiff should have engaged in, and why, sufficient to meet the clear and convincing reason standard. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The

---

[1] Dkt. 11 at 5 (citing AR 321, 333).

medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rendering his own medical opinion); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In sum, this Court finds the ALJ's reasons for rejecting Plaintiff's subjective need to elevate his legs throughout the day and after 45 minutes of sitting in a desk chair was not based on substantial evidence. Consequently, on remand the ALJ must reevaluate Plaintiff's credibility and identify what, if any, medical treatment Plaintiff should have engaged in and explain why.

II. <u>The ALJ failed to cite substantial evidence to reject Plaintiff's treating physician's opinion that Plaintiff needed to elevate his legs throughout the day.</u>

In November of 2019 Plaintiff's treating physician, Alexander Park, M.D. (Park), completed a medical report in which he opined that Plaintiff could perform part-time work at the sedentary exertional level but would be expected to miss four or more days of work per month due to his cirrhosis, and would need to lie down and elevate his legs for several hours during the day due to his fatigue. AR 414-15.

The ALJ acknowledged Park's opinion but concluded is was only "minimally persuasive" because although Park had a "longitudinal understanding of the claimant's medical impairments, symptoms, and limitations … the degree of limitation [Park] has assessed is not consistent with the claimant's minimal treatment history and reported symptoms." AR 112.

The Court concurs with Plaintiff that this finding does not meet the ALJ's burden of evaluating Park's opinion based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c).[2]

First, the ALJ failed to appreciate Park's specialization in Internal Medicine, which uniquely qualified him to analyze, diagnose, and treat chronic diseases affecting the internal organs.[3]

Second, although the ALJ arguably acknowledged Park's long-term relationship with Plaintiff by stating that Park had a "longitudinal understanding" of Plaintiff's medical history, he failed to recognize that Park offered detailed supporting explanations to justify his opined limitations, backed up by his own objective medical testing and treatment of Plaintiff over the course of several years, which was consistent with the longitudinal treatment record Park also reviewed. AR 283, 299, 300, 321, 344, 351, 369, 371, 415, 418, 451, 465, 468, 477.

Third, the ALJ's finding that the degree of limitation assessed by Park is not consistent with Plaintiff's "reported symptoms" is too vague for the Court to assess what symptoms the ALJ was referring to, and therefore does not constitute substantial evidence. *See e.g.*, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Lambert's] pain testimony where, as here,

---

[2] The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

[3] WebMD Editorial Contributors, *What is an Internist?*, WebMD https://www.webmd.com/a-to-z-guides/what-is-internist (Oct. 20, 2022 at 3:00 PM).

the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.").

Finally, as the Court found above, in evaluating the ALJ's assessment of Plaintiff's credibility, the ALJ's conclusion that the record reflects "minimal treatment" was not supported by substantial evidence. The Commissioner's *ex post facto* attempt at offering the interpretation that Plaintiff's liver disease "could have been treated through more aggressive measures such as a liver transplant" (Dkt. 11 at 5 (citing AR 321, 333)), is unavailing in light of the fact the ALJ did not find Plaintiff should have undergone a liver transplant, and actually noted that Park referred Plaintiff for an evaluation by the University of Washington liver transplant clinic in February 2018, where it was decided that Plaintiff was not a candidate for a transplant at that time but could become one if he abstained from alcohol and decreased his weight. AR 307, 110. The Commissioner's argument is also incongruous with the ALJ's observation that an October 2019 progress note stated Plaintiff was "clinically stable" and "may not require a transplant." Dkt. 11 at 10 (citing AR 110, 466). The ALJ did not find that Plaintiff had become "too healthy" for a transplant", as the Commissioner suggests, citing a January 2020 comment by the hernia repair surgeon that Plaintiff's "liver is probably as good as it [is] ever going to be". Dkt. 11 at 5 (citing AR 520). However, in the context in which it was made, it is obvious he did not mean Plaintiff's liver disease had resolved itself. The surgeon wrote:

> We also discussed his cirrhosis. This increases the complications associated with surgery and does have a potential death rate. However I think [the] overall health of his liver is probably as good as it [is] ever going to be. He needs to have this repaired … I told him I am willing to proceed.

AR 520. In other words, the surgeon's progress note simply memorialized that he discussed the increased risks associated with undergoing surgery due to Plaintiff's liver disease.

In sum, this Court finds that the ALJ did not correctly apply the law to his evaluation of Park's opinion, and failed to support his rejection of Park's opined limitations with substantial evidence. 42 U.S.C. § 405(g). On remand the ALJ must reevaluate Park's opinion based on supportability, consistency, relationship with the claimant, specialization, and other relevant factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c).

### III. The ALJ failed to sufficiently evaluate third-party evidence.

Plaintiff's brother submitted a third-party function report on May 31, 2019 on which he indicated that Plaintiff did not have much strength or energy, that he would break out into sweats and become shaky, and that his legs and feet would swell such that it was difficult for him to wear shoes. AR 249-50. He further indicated on this form that Plaintiff's lack of energy and swollen legs prevented him from doing much, including his former hobbies, but that he could manage simple chores and basic cooking. *Id*.

Plaintiff correctly contends that the ALJ mentioned this function report but did not state whether he was crediting it or discounting it. AR 110. Notably, the Commissioner erroneously states that the ALJ did not discuss the statement of Plaintiff's brother at all. Dkt. 11 at 11.

An ALJ may not disregard lay witness testimony "without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to provide a germane reason to discount lay witness testimony. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

Upon remand the ALJ is directed to reevaluate the lay witness statement and explain whether he credits or discredits it.

### IV. On remand the ALJ must resolve outstanding issues, reassess Plaintiff's RFC, and perform the remaining steps of the sequential evaluation as needed.

Plaintiff urges this Court to remand for an immediate award of retroactive benefits because a vocation expert has already considered the impact Plaintiff's need to elevate his feet

would have on his RFC. Dkt. 10 at 12-13 (citing AR 42). At the hearing, the vocational expert testified that an individual who needed to elevate his legs throughout the workday would require a special accommodation from his employer, and even then would not be productive. AR 42. Thus, according to Plaintiff, if the ALJ had included this functional limitation he would have been required to find Plaintiff disabled during the approximately two-year period at issue, prior to Plaintiff turning 50.

The "test for determining when evidence should be credited and an immediate award of benefits directed"—commonly referred to as the "credit-as-true" test—provides that benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Here, the second element is not met because the ALJ must reevaluate Plaintiff's credibility and identify what, if any, of his reported activities of daily living were inconsistent with his reported need to elevate his feet throughout the day, identify what, if any, medical treatment Plaintiff should have engaged in and explain why, reevaluate the lay witness statement and explain whether he credits or discredits it, and reassess Park's opinion based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c).

After completing the foregoing, the ALJ is instructed to also reassess Plaintiff's RFC and perform the remaining steps of the sequential evaluation as needed.

## CONCLUSION

This matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security for further proceedings consistent with this Order.

Dated this 21st day of October, 2022.

David W. Christel
United States Magistrate Judge